**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **CALIBER ONE INDEMNITY CO.,** | ) | |
| | ) | |
| **Plaintiff/Counterdefendant,** | ) | **Judge Blanche M. Manning** |
| | ) | |
| **v.** | ) | **Case No. 04 C 2424** |
| | ) | |
| **MILLARD CHICAGO WINDOW** | ) | |
| **CLEANING, LLC, et al.** | ) | |
| | ) | |
| **Defendants/Counterclaimants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Defendants/counterclaimants Millard Chicago Window Cleaning, L.L.C. ("MCWC") and

The Millard Group, Inc., (collectively "Millard") seek leave to supplement and amend their

existing answer and counterclaim. For the reasons stated herein, the motion is granted in part

and denied in part.

## I.    BACKGROUND

This action involves a general liability insurance policy issued to Millard[1] by Caliber One

Indemnity Co. ("Caliber One"). After the policy was issued, a leased worker was injured and

died while cleaning windows for Millard at the Allstate Insurance Building in Northbrook,

Illinois. The worker's executor subsequently sued Millard and Allstate in state court under the

Illinois Wrongful Death Act ("the *Villasenor* lawsuit"). After the suit was filed, Caliber One

accepted the defense of Allstate and Millard subject to a reservation of rights as to each entity.

Caliber One then withdrew its defense of Allstate when it determined that Allstate did not have a

"binding contract" with Millard to name Allstate as an additional insured. Caliber One

subsequently initiated this declaratory judgment action against Millard.

In its amended complaint, Millard asserts claims based on rescission and mistake based

on alleged misrepresentations made by Millard. Millard filed a two-count counterclaim seeking a

---

[1]Because the difference between MCWC and Millard is not relevant for purposes of this
motion, the court will refer to MCWC as "Millard" throughout this order for continuity's sake.

declaratory judgment that it is entitled to coverage in the *Villasenor* lawsuit and, in the event that rescission is permitted, it is entitled to a refund of the policy premiums.

In a June 16, 2004, scheduling order, this court set September 1, 2004, as the deadline for amending pleadings. On July 22, 2004, Allstate, after learning that Caliber One was attempting to rescind the policy it had issued to Millard, sent a letter to Millard stating that "if Caliber One fails to meet its obligations to Allstate, . . . Allstate will maintain its position that Millard remains obligated to indemnify, defend and hold harmless Allstate" in the *Villasenor* lawsuit. Millard then moved for leave to amend its counterclaim to add Counts III and IV regarding the effect on Allstate of a denial of coverage by Caliber One as to Millard. The motion was unopposed and was granted.

On March 16, 2005, Millard filed the instant motion seeking leave to supplement and amend its answer and counterclaim. According to Millard's opening motion, "Millard . . . learned of facts that give rise to certain additional affirmative defenses and bases for its counterclaims" which only became known to Millard after the September 1, 2004, deadline for filing amended pleadings. Millard seeks leave to file affirmative defenses not previously pled, make certain revisions to Count III of the counterclaim, and add Count V to the counterclaim.

Millard claims that it did not immediately seek to supplement and amend the pleadings due to ongoing settlement negotiations. Then, when it became apparent that the negotiations were going nowhere, counsel considered impleading the insurance brokers and planned to add the instant affirmative defenses and counterclaim when it filed a motion to implead. However, Millard ultimately filed suit against the brokers in February in state court due to jurisdictional concerns associated with impleading them in the instant case.

## II.     FACTS

Millard seeks to add four affirmative defenses, make revisions to Count III, and add a Count V to its counterclaim. As to the first (estoppel) and second (unclean hands) affirmative defenses and Count V, Millard states that "all arise out of the same factual allegations relating to

Caliber One's failure to appoint defense counsel with undivided loyalty to MCWC in the underlying case and the mishandling of that defense by counsel appointed by Caliber One."

As to the proposed third affirmative defense (estoppel) and the proposed fourth affirmative defense (unclean hands), Millard states that these "all arise out of the same factual allegations relating to Caliber One's efforts to deny coverage to Allstate on the basis of coverage positions that were never set out in Caliber One's reservation of rights letter to Allstate."

In its reply and accompanying affidavit, Millard lays out the following facts that form the basis of the aforementioned amendments and when it became aware of these facts:

(1) In documents produced to Millard by Caliber One, Millard learned after September 22, 2004, that "before retaining the law firm of Iwan Cray to serve as MCWC's defense counsel in the Villasenor lawsuit, Caliber One had retained Iwan Cray to serve as coverage counsel for Caliber One in opposition to Allstate's claim for coverage."

*(proposed first and second affirmative defenses and proposed Count V of the counterclaim);*

(2) In a letter dated September 28, 2004, and received by Millard on October 5, 2004, Millard learned that Caliber One had withdrawn its defense of Allstate .

*(proposed third and fourth affirmative defenses and supplement to Count III of the counterclaim);*

(3) Upon review of the electronic docket for the Circuit Court of Cook County on February 18, 2005, counsel learned that in early February 2005, the firm appointed to defend MCWC in the Villasenor lawsuit (Iwan Cray) withdrew its appearance and another firm substituted.

*(proposed first and second affirmative defenses and  proposed Count V of the counterclaim);*

(4) On February 24, 2005, current counsel for MCWC in the instant lawsuit

learned by telephone call with Caliber One's counsel, after an inquiry by Millard's counsel on February 18, 2005, seeking explanation for the substitution of counsel, that Iwan Cray had withdrawn as MCWC's defense counsel because Caliber One failed to promptly pay its bills in the prior months.

> (*proposed First and Second affirmative defenses and proposed Count V of the counterclaim).*

## III.    ANALYSIS

Under Fed. R. Civ. P. 15(d), "upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Under Rule 15(a), leave to amend is to be freely granted unless the non-moving party can show undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice or futility. *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2003 WL 22848969, at *2 (N.D. Ill. Dec. 1, 2003). The standards governing amendments and supplementation are the same. *Glatt v. Chicago Park District*, 87 F.3d 190, 194 (7th Cir.1996).

However, where a party seeks leave to amend a pleading after the deadline allowing amendments in the court's Rule 16(b)(1) scheduling order, Rule 16(b) governs the ability of a party to amend. *Humphrey v. East Mfg. Corp.*, 98 C 50413, 2003 WL 21361780, at *4 (N.D. Ill. Jun. 11, 2003). Rule 16(b) demands that "[a] schedule shall not be modified except upon a showing of good cause ...." *Id.* (citing Rule 16(b)). "In determining 'good cause,' courts look to whether the moving party exercised 'due diligence' in failing to meet the court's deadline." *Id.* If good cause is shown, the party must demonstrate that the amendment is also proper under Rule 15. *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995) (citations omitted).

### A.    Rule 16(b)

Caliber One argues that the proposed amendments must be addressed under the 'good

cause' requirements of Rule 16(b). In contrast, Millard contends that the Seventh Circuit does not abide by Rule 16(b) requirements because "[i]n the 22 years since Rule 16(b) added this language, the Seventh Circuit Court of Appeals has not once applied it to decide the timeliness of amendments to pleadings."[2] The court rejects Millard's position given the Seventh Circuit's decision in *Campania Mngt. Co. v. Rooks, Pits & Poust*, 290 F.3d 843, 848-49 n.1 (7th Cir. 2002). In *Campania,* the court addressed the amendment of a pleading. The court noted that "[u]nder Rule 16(b)(1) of the Federal Rules of Civil Procedure, district courts are required to issue a scheduling order that, among other things, 'limits the time to join other parties and to amend the pleadings.'" *Id.* The court expressed surprise that the scheduling order in that case did not contain a deadline for amendments, and stated that because no such deadline was set, it would analyze the amendment under Rule 15(a). *Id.* However, the court concluded by stating that "[w]e do insist, however, that the district courts faithfully follow the strictures of Rule 16(b) in future cases." *Id.* While this court agrees little Seventh Circuit caselaw exists as to the application of Rule 16(b) in this context, it cannot conclude that the Seventh Circuit has abandoned the requirements of Rule 16(b) based on the above-cited language.

Because the court concludes that the Rule 16(b) standard applies, Millard must show good cause for seeking the extension. According to Millard, the facts supporting the supplementation and amendment did not occur or were not made known to Millard until after the September 1, 2004, deadline. Based upon the information provided by counsel in its reply brief and affidavit as to when and how the facts supporting the amendments became known, the court agrees and finds that Millard has demonstrated good cause for seeking to modify the scheduling order.

The court then must determine whether Millard has met the requirements to amend under

---

[2]Millard has cited to cases which purport to stand for the proposition that the Seventh Circuit continues to apply the Rule 15(a) despite the 1983 amendments to Rule 16(b). These cases, however, are unpersuasive to the extent that they do not specify whether the requested amendments were sought before or after the cut-off date set for amending pleadings in the scheduling order.

Rule 15(a). Caliber One does not argue bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice. It does, however, contend that the amendments are futile and certain ones are untimely (i.e., undue delay) and thus should not be permitted under Rule 15(a).

### B. Futility and Timeliness

#### 1. First and Second affirmative defenses and proposed Count V

##### a. *Withdrawal of Iwan Cray and alleged failure of Caliber One to pay legal bills*

Counsel for Caliber One concedes that the proposed amendments to the First and Second affirmative defenses and proposed Count V of the counterclaim based on the withdrawal of Iwan Cray and Caliber One's alleged failure to pay the Iwan Cray firm are not untimely. They argue, however, that the amendments related to these facts are futile because a determination of and the extent to which Millard was harmed by the substitution of counsel (as alleged in the proposed Count V) cannot be ascertained until the underlying *Villasenor* case is resolved. According to Caliber One, because "the issue of whether Caliber One will have to indemnify Millard for some damage not yet definable caused by the substitution of counsel is not ripe for adjudication." *Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1087 (N.D. Ill. 2004) ("As a general rule, decisions about indemnity should be postponed until the underlying liability has been established. This rule is in place because a declaration regarding the duty to indemnify may have no real-world impact if no liability arises in the underlying litigation.") (citations and internal quotation marks omitted).

As an initial matter, the court notes that the alleged facts relating to the withdrawal of the Iwan Cray firm only recently occurred and were discovered almost immediately by Millard. Millard soon thereafter filed leave to add new affirmative defenses and a new count in its counterclaim based on Iwan Cray's withdrawal. To the extent the proposed amendments are based on these facts, the court will allow the supplemental/amended pleadings.

The court also rejects Caliber One's futility argument. Indemnity obligations are ripe

when they do not involve issues intertwined with the issues to be decided in the underlying suit. *Allianz v. Guidant Corp.*, No. 2-04-1038, 2005 WL 247747, at *6 (Ill. App. Ct. Jan. 28, 2005). Caliber One does not contend that the indemnification issue in the instant litigation is dependent on factual determinations in the *Villasenor* lawsuit.

Finally, as noted by Millard, Caliber One filed suit prior to the resolution of the *Villasenor* lawsuit seeking a declaratory judgment that it was not liable to indemnify Millard. Caliber One cannot seek a determination on the indemnification issue and then attempt to prohibit Millard from asserting affirmative defenses on the ground that the indemnification issue is not ripe.

> b.   *Before retaining the law firm of Iwan Cray to serve as Millard's defense counsel in the Villasenor lawsuit, Caliber One had retained Iwan Cray to provide coverage advice regarding Allstate's claim for coverage.*

Caliber One contends any amendment relating to Iwan Cray's retention by Caliber One to offer advice regarding Allstate's claim for coverage in the *Villasenor* lawsuit is futile because "there is nothing inappropriate or unethical about this non-concurrent representation by Mr. Cray." Caliber One also argues that it would be "grossly unfair" to the Iwan Cray firm to have an "unsubstantiated claim" of a conflict of interest in a federal pleading.

However, as noted by Millard, it (Millard) can seek to pursue indemnity under the estoppel doctrine based on an alleged breach of a duty of loyalty. *Home Ins. Co. v. Three I Truck Line, Inc.*, 95 F. Supp. 2d 901, 905-07 (N.D. Ill. 2000) ("where the insurer does undertake the defense of an action against the insured and causes some prejudice to the insured it may be estopped from asserting policy defenses"). Millard seeks to amend its counterclaim to add a count alleging in part that "[o]n information and belief, on the basis of advice received by Caliber One from Iwan Cray, Caliber One reserved its rights to deny coverage to Allstate, which was contrary to the interests of [Millard]." Based on these allegations, the court cannot conclude that Millard's estoppel argument is futile.

Caliber One also argues that the amendments based on these allegations are untimely

because Millard learned of the fact that Iwan Cray had provided advice to Caliber One regarding Allstate's claims at the send of September 2004, but is just now seeking leave to amend. In response, Millard claims that it delayed seeking leave to amend because settlement negotiations were ongoing in the fall and then when those were unfruitful, discussions were held in January and February 2005 about impleading the insurance brokers into this case. Millard's counsel states that it had decided to wait to seek leave to make all of the proposed amendments at the same time.

"[D]elay in and of itself does not constitute a sufficient basis for denying a motion to amend." *Ocean Atlantic*, No. 02 C 2523, 2003 WL 22848968, at *2. However, "the longer the delay, the greater the presumption against granting leave to amend." *Id.* (quotation marks and internal citation omitted). Nevertheless, Caliber One does not claim any undue prejudice if the amendment were allowed. Further, according to Millard, depositions are at an "early stage" and the only deposition taken at the time of the filing of this motion to amend and supplement was of an underwriter and none of the amendments deal with underwriting issues. Accordingly, the court finds that the amendments based on these facts are permitted under Rule 15(a).

2. <u>Affirmative Defenses 3 and 4 and Counterclaim Count III</u>

The proposed amendments to add affirmative defenses three and four and to supplement Count III of Millard's counterclaim relate to "Caliber One's efforts to deny coverage to Allstate on the basis of coverage positions that were never set out in Caliber One's reservation of rights letter to Allstate." Caliber One argues that the amendments based on these facts are futile because (a) Millard has failed to state a claim in that it does not allege that it detrimentally relied on Caliber One's conduct and (b) Millard has no standing to challenge the basis of the denial of coverage as to Allstate.

As to the first basis, this court agrees with Millard that in this insurance context, estoppel does not require a showing of detrimental reliance or prejudice. *LaGrange Mem. Hosp. v. St. Paul Ins*. Co., 740 N.E.2d 21, 30 (Ill. App. Ct. 2000). The standing claim, however, is a more

interesting issue.  In Count III of its counterclaim, Millard seeks a declaration that Caliber One must defend and indemnify Allstate as an insured for the claims asserted in the *Villasenor* lawsuit.  Millard  alleges that it has standing to assert this because Allstate has informed Millard that if Caliber One fails to provide defense and indemnity, Allstate will "maintain its position that Millard remains obligated to indemnify, defend and hold harmless Allstate in connection with the [*Villasenor* lawsuit]."  In addition, Allstate has informed Millard that "Caliber One's failure, at any time, to meet its obligations to Allstate would constitute a breach by Millard of its obligations with respect to insurance for Allstate."

Millard claims that Caliber One cannot challenge standing because Millard pled in its original Count III of the counterclaim that it is "directly interested in and affected by" the dispute between Allstate and Caliber One.  Millard asserts that because Caliber One did not deny this allegation in the original pleading, it has already admitted the fact and cannot now question Millard's standing to challenge Caliber One's withdrawal of its defense of Allstate.  Although Millard alleges that Caliber One informed Allstate in September 2004 that it was withdrawing from its agreement to pay for independent defense counsel to Allstate in the Villasenor lawsuit, it is not clear whether Allstate has filed suit against Caliber One, though the court assumes not given Millard's counterclaim against Caliber One.

 "Standing is a threshold issue and is fundamental to this Court's subject matter jurisdiction." *Polis v. Getaways, Inc.*, No. 98 C 1808, 2001 WL 185481, at *2.  Standing is indispensable and must exist when the complaint is filed. *Id*. at *1 (citations omitted).   Any plaintiff seeking to invoke the power of a federal court bears the burden of demonstrating: (1) an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, that is, the injury is fairly traceable to the challenged action of the defendant, not the result of the independent action of some third party not before the court; and (3) a favorable decision likely will redress the injury. *O'Sullivan v. City of Chicago*,

396 F.3d 843, 854 (7th Cir. 2005) (internal quotation marks, citations and footnotes omitted).

In addition to constitutional standing requirements, the standing doctrine includes several judicially imposed limits on the exercise of federal jurisdiction, including the general prohibition on a litigant's raising another person's legal rights, among other things. *Id.* (citations and quotation marks omitted). A person whose injury can be redressed by a favorable judgment has standing to litigate. *Federal Deposit Ins. Corp. v. Ernst & Young LLP*, 374 F.3d 579, 581-2 (7th Cir. 2004) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-62 (1992)).

Further, another court in the Northern District of Illinois recently discussed the standing requirements for asserting legal rights of a third-party:

> As a general rule, a litigant must assert his own legal rights and cannot assert the legal rights of a third-party. However, a litigant may assert the rights of absent third-parties in certain limited situations. In determining whether a litigant who seeks standing to assert the legal rights of a third-party may do so, a two-part inquiry is involved. First, the litigant must have personally suffered some injury-in-fact adequate to satisfy Article III's case or controversy requirement. Second, certain prudential considerations must point in favor of permitting the litigant to assert the third-party's legal rights. Among the prudential considerations to consider are the requirements that the litigant must have a legally sufficient relation to the third-party, and there must exist some hindrance to the third-party's ability to protect his or her own rights.

*In re African-American Slave Descendants Litigation*, 304 F. Supp. 2d 1027, 1052 (N.D. Ill. 2004) (citations omitted).

Standing is an issue of subject matter jurisdiction and cannot be waived. *Native American Arts, Inc. v. The Waldron Corp.*, 253 F. Supp. 2d 1041, 1045 (N.D. Ill. 2003) ("Even where the parties agree that a plaintiff has Constitutional standing, courts must satisfy themselves that the jurisdictional requirement is met.") (citations omitted). Thus, Caliber One's supposed "admission" in its response to Millard's counterclaim is insufficient to confer standing on Millard. Further, the court notes that neither party has provided anything but a superficial discussion of the standing issue. Nevertheless, based on the above-referenced principles regarding standing, the court finds that Millard does not possess standing to assert claims on behalf of Allstate.

On the one hand, if Millard is successful on its claim that Caliber One breached its duty to defend and indemnify Allstate, Millard would presumably be off the hook for any defense or indemnification costs of Allstate. Thus, some "probabilistic benefit" to Millard exists. *See North Shore Gas Co. v. E.P.A.*, 930 F.2d 1239, 1242 (7th Cir. 1991) ("a probabilistic benefit from winning a suit is enough 'injury in fact' to confer standing in the undemanding Article III sense.") (internal citations omitted). On the other hand, Allstate is the party which most obviously possesses standing to allege that Caliber One owes it a duty to defend and indemnify. While Millard arguably has a "legally sufficient relation" to Allstate given that Millard was to have properly included Allstate as an additional insured on the insurance policy issued by Caliber One, Millard has not demonstrated that any hindrance exists to Allstate's ability to protect its own rights. It is Millard's burden to prove that it possesses standing. *520 South Michigan Avenue Associates, Ltd. v. Devine*, No. 04 C 6400, 2005 WL 941540, at *2 (N.D.Ill. Apr. 22, 2005). Because Millard has not met its burden, the court dismisses Count III of the Counterclaim.

## III. Conclusion

For the reasons specified above, Millard's motion to supplement and amend [25-1] is granted in part and denied in part.

ENTER:

*Blanche M. Manning*

**Blanche M. Manning**
**United States District Judge**

**DATE:** May 12, 2005